UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PEGGY A. HALL,
                                                    07-CV-6169
                    Plaintiff,

          v.                                        **DECISION
                                                    and ORDER**
KODAK RETIREMENT INCOME PLAN,
KODAK RETIREMENT INCOME PLAN
COMMITTEE, and TRUSTEES OF THE
KODAK RETIREMENT INCOME PLAN,

                    Defendants.
_____

## INTRODUCTION

Plaintiff, Peggy A. Hall ("plaintiff") brings this action under the Kodak Retirement Income Plan pursuant to the Employee Retirement Income Security Act ("ERISA") §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) against defendants, Kodak Retirement Income Plan ("KRIP" and/or the "Plan"), Kodak Retirement Income Plan Committee ("KRIPCO" and/or the "Plan Administrator") and Trustees of the Kodak Retirement Income Plan (the "Trustees") (collectively "defendants"), alleging that her request for benefits under the Plan were improperly denied. Specifically, plaintiff, whose husband was a participant in KRIP during his employment at Kodak, seeks an award of the wrongfully denied benefits and a declaration of her rights pursuant to the Plan issued by the defendants to her late husband William Hall ("Mr. Hall").

Defendants move for summary judgment against the plaintiff on grounds alleging that there are no material facts in dispute, and

accordingly plaintiff's Amended Complaint must be dismissed in its entirety as a matter of law. In support of their motion, defendants contend that the Plan Administrator properly interpreted the terms of KRIP and correctly determined that plaintiff is not entitled to benefits under KRIP. Plaintiff opposes defendants' motion and cross-moves for summary judgment. Plaintiff argues that the terms of the Plan require that participants receive written information regarding all of the retirement benefit payment options under the Plan and that failure to provide such disclosure mandates payment of certain benefits to plaintiff. Because evidence shows that Mr. Hall was not provided with the required information under the Plan, plaintiff asserts she is entitled to benefits under KRIP.

For the reasons set forth below, I grant defendant's motion for summary judgment, and deny plaintiff's cross-motion for summary judgment.

## BACKGROUND

Defendants previously filed a motion to dismiss requesting that the Court dismiss Count III of plaintiff's Amended Complaint. See Hall v. Kodak Retirement Income Plan, et al., 2008 WL 788577 (W.D.N.Y.2008) ("March 2008 Order").[1] The Court granted defendants'

---

[1] On March 29, 2007, plaintiff commenced this action against the Plan, KRIPCO and the Plan's Trustees alleging three separate claims. On September 18, 2007, plaintiff filed an Amended Complaint, Count III of which alleged that defendants breached their fiduciary duties under ERISA to both plaintiff and Mr. Hall. Counts I and II, brought under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), claim that plaintiff's request for Plan benefits was "improperly denied" and that she is entitled to survivor benefit under the Plan's terms. Plaintiff seeks an award of the wrongfully denied benefits as relief for Count I and a declaratory judgment concerning her rights under the Plan as relief for Count II.

motion as set forth in its March 2008 Order.[2] Accordingly, the
Court assumes familiarity with the procedural and factual
background set forth in its prior decision in this matter. <u>See</u>
March 2008 Order. Thus, the Court will only address the most
pertinent information as it relates to this summary judgment
motion. The following facts are undisputed except where
characterized otherwise.[3]

### A.    Applicable Provisions of the Kodak Retirement Income Plan

Eastman Kodak Company ("Kodak") maintains a pension plan,
known as the Kodak Retirement Income Plan ("KRIP" and/or the
"Plan") for its eligible employees.[4] Pursuant to §205 of ERISA, 29
U.S.C. §1055, the Plan provides that the normal form of payment of
pension benefits for participants who are unmarried is a Straight
Life Annuity that is paid starting on the participants' "Annuity
Starting Date."[5] A straight life annuity is an annuity that would
continue for the retiree's life only, with no entitlement to
survivor benefits by his or her surviving spouse or other
beneficiary upon participant's death. On the other hand, the normal

---

[2]Defendants' summary judgment motion seeks to dismiss the remaining two counts in the Amended Complaint.

[3]Most of the facts are undisputed by both parties. Those facts which are disputed are not material for purposes of deciding the summary judgment motion.

[4]It is undisputed that KRIP is an employee benefit plan governed by ERISA § 3(35), 29 U.S.C. § 1002(35).

[5]The Annuity Starting Date is defined as the first date of the first month the benefits are payable under KRIP. For Mr. Hall the Annuity Starting Date was his retirement date.

form of pension benefits for married participants is a qualified 50% joint and survivor annuity ("QJSA" and/or "Contingent Annuitant Annuity"). A QJSA entitles a surviving spouse to receive 50% of the participant's annuity to be paid as a lifetime benefit after the participant's death. However, KRIP allows participants to elect to receive benefits, otherwise payable in the normal form, in an optional form, subject to certain plan limitations and within the election time period specified in the Plan. For instance, a married participant can elect not to take his benefits in the form of a QJSA provided that the participant's spouse as of the Annuity Starting Date consents in writing to such an election. KRIP also permits participants to elect Optional Contingent Annuitant Annuity benefits, wherein a participant may elect a benefit payment scheme different from the straight life annuity and the QJSA. All of the Plan provisions are explained in detail to plan participants by way of a summary plan description ("SPD").[6]

**B.   Election of Benefits by Mr. Hall**

Mr. Hall was a participant in the Plan during his employment at Kodak. In the early 1990s, Kodak offered a special retirement program entitled the Kodak Resource Redeployment and Retirement Plan ("KRRR Plan"). Mr. Hall retired from Kodak effective June 1, 1992 at the age of 56. At the time of his retirement, Mr. Hall was married to Marlene Hall. Instead of receiving his retirement

---

[6]The effective date of such election is the participant's Annuity Starting Date.

benefits in the normal form of a QJSA, Mr. Hall elected to receive his retirement benefits in the form of a straight life annuity. As was mandated by KRIP and by ERISA, Mr. Hall submitted his election of this optional form of benefits in writing in the required form. The form submitted by Mr. Hall contained the notarized written consent of Marlene Hall.

Mr. Hall began receiving a straight life monthly annuity from the Plan on his Annuity Starting Date of June 1, 1992. In 1993, after his retirement from Kodak and after he elected to receive his benefits in the form of a straight life annuity, Mr. Hall divorced Marlene Hall and in late 1994 married plaintiff. Under the terms of the KRIP, up until January 1, 2006,[7] Mr. Hall could have revoked his prior election to receive a straight life annuity when he married plaintiff, or any time thereafter until January 1, 2006 and elected to receive the 50% joint and survivor annuity plaintiff now requests. However, he never revoked his prior election as to the form of his retirement benefits. Accordingly, he continued to receive his monthly annuity payments calculated on a straight life annuity basis until his death in 2006.

Plaintiff claims that on May 11, 1992, Mr. Hall and plaintiff attended a meeting with a representative from Kodak to discuss Mr. Hall's retirement/pension benefits. During the meeting, plaintiff

---

[7]Prior ro January 1, 2006, KRIP allowed a participant to revoke his election to receive his future benefits and choose another form. However, the participant was required to submit an election form to KRIPCO, together with satisfactory evidence of good health.

states that Mr. Hall was not presented with any option for appointing plaintiff as an Optional Contingent Annuitant under §11.07 of the Plan despite the fact the she was present at the meeting.[8] In addition, plaintiff states that Mr. Hall was only presented with two options for receipt of pension benefits under KRIP, namely, the QJSA and the Straight Life Annuity. Defendants dispute plaintiff's allegations and contend that Mr. Hall signed an acknowledgment that he had received a Fact Sheet prior to making his election. See Affidavit of Michael Pribanich[9] ("Pribanich Aff."), ¶11. The Fact Sheet described four payment options[10] available to Mr. Hall. See id. In addition, plaintiff claims that the election form provided to Mr. Hall during th May 1992 meeting only made the Contingent Annuitant Annuity benefit available "if married." Defendants dispute this statement but contend that it is immaterial. The election form refers to a fact sheet that Mr. Hall acknowledged receiving describing all four payment options. The election form printed out by Kodak only showed the form of payment

---

[8]With respect to the election of benefits, plaintiff contends that under KRIP, the Plan includes several provisions that are relevant to the claims asserted in this action, including §§11.02 (Election Procedure), 11.03 (Notification), 11.07 (Optional Forms of Contingent Annuitant Annuity).

[9]In 1992, Pribanich was employed by Kodak as a Benefits Counselor. In that position, his job duties included providing benefits counseling to Kodak employees who were retiring. See Pribanich Aff., ¶1. He provided benefits counseling to Mr. Hall in May 1992. See id., ¶2.

[10]The four payment options include: (1) Straight Life Annuity, QJSA, Optional Contingent Annuitant and Lump Sum payment.

elected by Mr. Hall, and because he was married, the legally required QJSA. See Pribanich Aff., ¶12.

Moreover, plaintiff claims that Mr. Hall was not presented with any election forms or documents explaining any other options for payment of pension benefits under the Plan. Defendants contend that this statement is immaterial given that the information at issue was provided to Mr. Hall *prior* to the meeting and Mr. Hall signed an acknowledgment that he had received it. See Pribanich Aff., ¶14. Plaintiff also asserts that at the May 1992 meeting, neither Mr. Hall nor plaintiff inquired as to the possibility of naming plaintiff as an Optional Contingent Annuitant since they assumed the two options identified on the election form were the only options available under the KRIP. Defendants dispute this and contend that plaintiff has no basis for attesting as to what Mr. Hall assumed or why he chose not to make certain inquiries at the meeting. See Pribanich Aff., ¶15.[11] Also, as to what plaintiff had assumed at that time and why, is immaterial since the election of benefits decision was not hers. Id. Further, Mr. Hall acknowledged that he was informed of and could have elected the Optional Joint and Survivor Annuity, but did not do so. See id., ¶22.

Plaintiff claims that she first learned of Mr. Hall's election rights, where he could have designated her as a contingent

---

[11]Once again, the information at issue was provided to Mr. Hall *prior* to the meeting and Mr. Hall signed an acknowledgment that he had received it.

annuitant beneficiary under KRIP, when she received a letter from Kodak's Benefit's Center after Mr. Hall's death. Plaintiff asserts that neither Mr. Hall nor plaintiff were ever specifically notified of those rights when they were married or thereafter, and KRIP never provided additional or revised election forms or paperwork to inform Mr. Hall or plaintiff of this right. Defendants dispute plaintiff's assertions and state that the statements as they apply to plaintiff are immaterial. With respect to Mr. Hall, he was provided with numerous SPD's explaining that he could change his form of payment after he retired, and in fact he signed an acknowledgment in 1992 that he received a Fact Sheet explaining that he could change his form of payment after he retired. See Pribanich Aff., ¶10; Affidavit of Jan Peckham[12] ("Peckham Aff."), ¶¶4-7, Exs. A-D. Plaintiff asserts that Mr. Hall did not receive the SPD for 1991. Defendants dispute this statement but contend that in the end it is immaterial. The 1991 SPD was distributed in the normal course and even if Mr. Hall did not receive the 1991 SPD,

---

[12]Peckham has been employed by Kodak since 1976 and has been Kodak's Communication's Manager since 1992. See Peckham Aff., ¶1. In this position, the job duties include managing the distribution of KRIP SPDs to all participants including employees, retirees and disabled former employees. See id., ¶2. Beginning in 1995 Kodak started maintaining records showing when specific SPDs were sent to which plan participants. See id., ¶3. The records show that Mr. Hall was sent a copy of the 1995 SPD, which was mailed to all pre-1993 retirees in December 1995. See id., ¶4. Plaintiff was also sent her own copies of the 1997 and 2003 SPDs. See id., ¶¶5-6. All SPDs distributed since 1992 have been mailed to the plan participant's home address. SPDs distributed to employees prior to 1992 were either mailed to employees' home addresses or provided at work. As a Kodak employee and KRIP participant since 1976, Peckham recalls receiving KRIP SPDs prior to 1992 either through the mail at the home address or at work. Accordingly, Peckham states that there is no reasonable basis to doubt that Mr. Hall as an active employee would have been mailed or provided at work a copy of the 1991 SPD as well as the 1977, 1980, 1983 and 1987 SPDs. See id., ¶7; see also Pribanich Aff, ¶10 ("As an active employee, Mr. Hall would have been sent copies of the 1977, 1980, 1983, 1987 and 1991 SPDs during the ordinary course of business.")

there is ample evidence that he was provided with the information concerning his payment options on numerous occasions. <u>See</u> Pribanich Aff., ¶¶ 7-10; Peckham Aff., ¶¶ 3-7, Ex. A.

**C.   Plaintiff's Claim for Benefits and KRIPCO's Denial**

Plaintiff is not and was never a participant in the Plan, as that term is defined by ERISA §3(7), 29 U.S.C. §1002(7). Rather, plaintiff alleges that she is entitled to benefits solely as a "beneficiary" of her late husband. Specifically, plaintiff seeks to be paid a 50% Joint and Survivor Annuity, also referred to as a Contingent Annuitant Annuity, under KRIP. By letter dated March 31, 2006, the Kodak Benefits Center wrote to plaintiff to inform her of the benefits available to her upon the death of Mr. Hall. By letter dated April 14, 2006, plaintiff essentially submitted a claim for 50% Joint and Survivor Annuity under KRIP contending that she had been informed by a representative of the Department of Labor ("DOL") that she was entitled to such 50% survivor annuity under U.S. DOL regulations.

On June 9, 2006, the Plan Administrator denied the claim explaining that the DOL regulations upon which plaintiff relied did not apply in plaintiff's circumstances. Other reasons in support of KRIPCO's decision to deny plaintiff the 50% Joint and Survivor Annuity include the fact that Mr. Hall had the opportunity to receive his retirement benefits in the form of a QJSA (50% Joint and Survivor Annuity) both at the time he first retired and again

when he remarried, but he elected to receive his benefits in the form of a straight life annuity. Mr. Hall did not change his election to receive benefits other than a straight life annuity at any time. Accordingly, plaintiff was not entitled to receive 50% of his annuity from KRIP after his death. Plaintiff does not dispute these statements but claims that Mr. Hall was not advised by defendants that he was able to elect an Optional Contingent Annuitant Annuity when he retired from Kodak or elect a Contingent Annuitant Annuity after he married plaintiff.

While plaintiff is not entitled to a 50% Joint and Survivor Annuity under KRIP, Kodak notified her that she was entitled to be paid a Survivor Income Benefit ("SIB"), which is an annuity voluntarily paid by Kodak outside of KRIP to eligible survivors of Kodak retirees equal to approximately 30% of Mr. Hall's straight life annuity payments under KRIP.[13] By letter dated August 28, 2006, plaintiff appealed the denial through KRIPCO's appeals process contending that Mr. Hall was not offered the right to elect the 50% Joint & Survivor Annuity at pre-retirement or at change of status.

The Plan Administrator denied the appeal by letter dated December 29, 2006 and it provided plaintiff with the election form signed by Mr. Hall in 1992 as requested by plaintiff. The denial letter outlined the reasons for KRIPCO's decision including that

---

[13]The amount of the SIB is calculated based upon 30% of the deceased retiree's monthly annuity unless the spouse is more than 10 years younger than the deceased retiree in which case there is a small reduction for each year that the age difference is greater than ten years. In plaintiff's case, there was a reduction of the SIB benefit since she was approximately 21 years younger than Mr. Hall. See Affidavit of Patricia A. Obstarczyk ("Obstarczyk Aff.").

Mr. Hall submitted documentation electing a straight life annuity instead of a 50% Joint and Survivor Annuity. The letter also explained that, although Mr. Hall could have elected a 50% Joint and Survivor Annuity upon his remarriage, he did not make such an election and never completed and submitted the requirements for such election. Accordingly, plaintiff was not eligible to receive the 50% Joint and Survivor Annuity under KRIP and instead is eligible to receive the SIB annuity paid by Kodak.

## **DISCUSSION**

### I.   **The Parties' Motions for Summary Judgment**

A motion for summary judgment shall be granted if the pleadings demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted). The moving party initially bears the burden of demonstrating that no genuine issues of material fact remain. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once this showing is made, the nonmoving party may

not rely solely on "[c]onclusory allegations, conjecture, and speculation," <u>Niagara Mohawk Power Corp. v. Jones Chem. Inc.</u>, 315 F.3d 171, 175 (2d Cir.2003) (internal citations and quotation marks omitted), but must present specific evidence in support of its contention that there is a genuine dispute as to the material facts. <u>See</u> Fed.R.Civ.P. 56(e). The Court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts." <u>See</u> <u>Scott v. Harris</u>, 127 S.Ct. 1769, 1776 (2007) (citing Fed.R.Civ.P. 56(c)).

Defendants move for summary judgment contending that the plaintiff is not entitled to receive the 50% Joint and Survivor Annuity she seeks. Defendants argue that the Plan Administrator's decision denying plaintiff a 50% Joint and Survivor Annuity was reasonable and supported by the unambiguous Plan language, by the election of Mr. Hall as to the form he was to receive his retirement benefits and by ERISA. Plaintiff contends that she is entitled to summary judgement because the facts demonstrate that Mr. Hall was never presented with an opportunity to elect any other payment option under the Plan, such as the Optional Contingent Annuitant benefit permitted under §11.07 of the Plan. According to plaintiff, defendants' failure to provide Mr. Hall with the information or election forms to elect any other options under the Plan are clear and decisive evidence of defendants' arbitrary and

capricious handling of his benefits under KRIP and of plaintiff's claims for Contingent Annuitant Annuity benefits.

## II.  __Standard of Review__

"[A] denial of benefits challenged under [ERISA § 502(a)(1)(B)] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." See Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 622 (2d Cir.2008)(quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115(1989). If the benefit plan vested the administrator with discretionary authority, the denial of benefits is subject to a deferential, "arbitrary and capricious" standard of review. See Burke v. Kodak Retirement Income Plan, 336 F.3d 103, 109 (2d Cir.2003). Under this standard, the decision to deny benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" See Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir.1999) (quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir.1995)). In the instant case, it is undisputed by both parties that the Plan vests the Plan Administrator with discretionary authority to determine eligibility for benefits and construe the terms of the KRIP. Accordingly, there is no dispute that the Court's review of plaintiff's denial of her claim for benefits shall be under an abuse of discretion standard.

### III. **The Plan Administrator's Decision Was Reasonable and Supported By Substantial Evidence**

Plaintiff's main argument in support of her cross-motion for summary judgment and in opposition to defendants' motion for summary judgment is that Mr. Hall was never provided with written notification and explanation by defendants of all the available benefit payment options as required by Article 11 of the Plan. See Pl. Br. at 17-18. According to plaintiff, KRIP specifically provides that where a participant is not provided with "a written explanation of the terms and conditions of the straight life annuity and Contingent Annuitant Annuity forms of benefit payment," the eligible surviving spouse is entitled to receive a 50% Joint and Survivor Annuity. See id. at 18. Accordingly, plaintiff contends that defendants acted in an arbitrary and capricious manner when they denied plaintiff's claim for benefits.

Defendants contend that summary judgment is appropriate because under the terms of the Plan, plaintiff was not entitled to a 50% Joint and Survivor Annuity upon the death of Mr. Hall. See Def. Br. at 10. Mr. Hall chose to receive his retirement benefits in the form of a straight life annuity when he retired from Kodak nearly two years prior to marrying plaintiff and he never revoked that decision in accordance with the terms of KRIP, even after he remarried. Accordingly, defendants argue that KRIPCO's decision denying plaintiff's claim for a 50% Joint and Survivor Annuity is reasonable and supported by substantial evidence. See id. at 11. In

addition, defendants claim that this conclusion is not changed because of plaintiff's contentions that Mr. Hall did not receive a copy of the 1991 SPD or an election form listing all the optional forms of benefit payments upon his retirement. Defendants contend that there is substantial evidence that Mr. Hall was provided with the information of his optional forms of benefit payments on many occasions, including prior to and after he retired. <u>See</u> Def. Reply Br. at 12-13. Accordingly, plaintiff's claims are insufficient to raise a genuine issue of material fact. The Court agrees.

**A.   Plaintiff's Claims that Mr. Hall Did Not Receive The Proper Information Is Insufficient To Defeat Defendants' Motion For Summary Judgment.**

Plaintiff claims that she is entitled to receive a 50% Joint and Survivor Annuity because the election form executed by Mr. Hall did not notify him that he could have elected to take his annuity in the form of an Optional Joint and Survivor Annuity. <u>See</u> Pl. Br. at 17. The relevant statutory requirements under ERISA relating to the form and payment of benefits are set forth in 29 U.S.C. §§1055 and 1056. "Under ERISA, waiver of the qualified joint and survivor annuity, the standard form of payment from a defined benefit plan to a participant before death, is invalid unless it satisfies the rigorous rules in §1055(c)[(2)]." <u>See</u> <u>Rice v. Rochester Laborers' Annuity Fund</u>, 888 F.Supp. 494, 498 (W.D.N.Y.1995) (quoting <u>Lester v. Reagan Equip. Co. Profit Sharing Plan & Empl. Savings Plan</u>, 1992 WL 211611, at *5 (E.D.La.1992)). However, those ERISA provisions do

not require that the particular document used to record a plan participant's election of his form of benefit payments actually list every option available under the plan itself. Accordingly, while these statutory provisions set forth the necessary elements for spousal consent to an election of benefit form other than the QJSA (i.e. the spouse's signature must be notarized), see 29 U.S.C. §1055(c)(2), there are no requirements that officially order that the election of benefit form itself list each option available to a plan participant. See id.

Here, during the relevant time period, it was Kodak's practice to have plan participants meet with benefits counselors to discuss their election options. When the participant notified the counselor the specific form in which he or she elected to receive benefits, the counselor inputted that information into a computer and printed out an Election Form specifically tailored for that plan participant. The function of the election form was to record each plan participant's election. It was not the means used to convey information relating to the options available to plan participants. Accordingly, it is immaterial that the election form itself did not list all of the options available to Mr. Hall since it ultimately represented the choice made by him.

Moreover, plaintiff claims that she is entitled to receive the Contingent Annuity Annuitant benefits because Mr. Hall allegedly did not receive a copy of the 1991 SPD explaining all of the forms

of benefits he could elect. See Pl. Br. at 17-19.[14] Plaintiff's argument is unavailing for several reasons. First, it is undisputed and there is substantial record evidence that shows that Mr. Hall was periodically provided with SPD's throughout his years of employment at Kodak and after his retirement explaining that he could change his form of payment. SPDs setting forth a discussion of the form of benefit elections, including the Optional Joint and Survivor Annuity Option, and the ability to change options after retirement were mailed or provided at work to active employees in 1977, 1980, 1983, 1987, 1991, 1995 and 1997. See Pribanich Aff., ¶10; Peckham Aff., ¶¶3-7.[15] While Kodak did not maintain proof of mailing before 1995, the business records prepared and maintained by Kodak starting in 1995 confirm that Mr. Hall was sent a copy of the 1995 SPD. See Peckham Aff., ¶4, Ex. A. Accordingly, from 1977 through 1995, Mr. Hall was sent at least 6 different SPDs explaining the Optional Joint and Survivor Option and the ability to change benefits after retirement. See Pribanich Aff., ¶10; Peckham Aff., ¶¶3-7.

Regardless of whether business records verify mailing before 1995, it was reasonable for KRIPCO to assume that Mr. Hall as well

---

[14]When plaintiff appealed KRIPCO's denial of her claim by letter dated August 28, 2006 she contended that Mr. Hall was not offered the right to elect the 50% Joint & Survivor Annuity at pre-retirement or at change of status. Notably absent however, from her letter was any claim that Mr. Hall never received copies of the 1991 SPD or information relating to his benefit form options. Indeed, plaintiff enclosed with her claim letter relevant portions of the 1991 KRIP.

[15]Plaintiff was also sent her own copies of the 1997 and 2003 SPDs. See Peckham, ¶¶5-6.

as plaintiff had the necessary information when they denied plaintiff's claim. Despite receiving the SPDs explaining Mr. Hall's right to revoke his prior election, he never did so and he continued to receive 100% of his annuity until his death in 2006. Mr. Hall's failure to change his designated form of benefits, given all the information provided to him over the years, shows that Mr. Hall chose the annuity form he wanted to receive.

Second, even assuming that the SPDs were deficient as defendants appear to concede for purposes of this summary judgment motion only, plaintiff must demonstrate that she was prejudiced by the deficient SPDs. The United States Court of Appeals for the Second Circuit has set forth the relevant standard: "Cognizant of ERISA's distribution of benefits, [the court] require[s], for a showing of prejudice, that a plan participant or beneficiary was likely to have been harmed as a result of a deficient SPD. Where a participant makes this initial showing, however, the employer may rebut it through evidence that the deficient SPD was in effect a harmless error." See Burke v. Kodak Retirement Income Plan, 336 F.3d 103, 113 (2d Cir.2003); Weinred v. Hosp. for Joint Diseases Orthopaedic Inst., 404 F3d 167, 171 (2d Cir.2005). The Second Circuit also requires a showing of likely prejudice when there is a "complete absence of an SPD." See Weinreb, 404 F.3d at 171. "Where a plan administrator fails to fulfill its statutory duty of furnishing an SPD, but where the evidence shows that the claimant had actual knowledge of the requirement at issue, any error is

necessarily harmless.... Although ERISA's SPD requirement places the burden of communicating eligibility conditions on the employer ... it would be unfair to hold the employer liable when a claimant fails to adhere to a known plan requirement through procrastination, indecision, or the like...." See id. at 171-72.

Defendants argue that Mr. Hall had actual knowledge of and was provided with information of the plan provisions at issue, and his signed acknowledgment of the receipt of the Fact Sheet provides evidence that he received the information and based his retirement decision on the information it contained. See Defs. Br. at 8. The Court agrees with that argument. There is sufficient evidence that demonstrates that Mr. Hall signed an acknowledgment that he had received a Fact Sheet prior to making his election. The Fact Sheet described four payment options available to Mr. Hall. In addition, the election form that Mr. Hall signed in the May 1992 meeting refers to the Fact Sheet that Mr. Hall acknowledged receiving which described all four payment options. Further, the evidence shows that the options for payment of pension benefits under the Plan was provided to Mr. Hall *prior* to the meeting and Mr. Hall signed an acknowledgment that he had received it. Accordingly, Mr. Hall acknowledged that he was informed of and could have elected the Optional Joint and Survivor Annuity, but chose not to do so. It

follows that the decision to deny plaintiff the benefit under the Plan was not arbitrary and capricious.[16]

Third, 29 U.S.C. §1024(b) governs the furnishing of information to plan participants. Specifically, §1024(b)(1) sets out the requirements for how plan administrators must notify participants of the terms of a plan, and the DOL has promulgated regulations interpreting the disclosure requirements. The pertinent regulation provides that the SPD "must be sent by a method or methods of delivery likely to result in full distribution," that the "administrator shall use measures reasonably calculated to ensure actual receipt of the material by plan participants[.]" See 29 C.F.R. §2520.104b-1(b)(1). Materials distributed through the mail may be sent by first class mail and proof of actual receipt by a plan participant is not required. See id. Accordingly, this regulation means that the plan administrator must make reasonable efforts to ensure each plan participant's actual receipt of the plan documents. In this case, the substantial evidence demonstrates that KRIPCO used reasonable measures to ensure actual receipt of the SPDs by plan participants including Mr. Hall and plaintiff. See pp. 8, 17, nn. 12 and 15.

---

[16]Kodak's business records demonstrate that Mr. Hall was provided with a Fact Sheet informing him that he could revoke his prior election to receive a straight life annuity even after retirement and after he started receiving benefits so long as he provided the Plan Administrator with proof of good health and adhered to certain other requirements. Despite receiving these notifications, Mr. Hall never revoked his prior election.

Fourth, as mentioned above, Mr. Hall was provided with and acknowledged that in 1992 he received a Fact Sheet[17] with information regarding optional benefits election forms. Plaintiff, in an attempt to create an issue of fact, argues that Mr. Hall was never provided with a written explanation of the terms, conditions and the effect of his election of benefits under the Plan. See Pl. Br. at 16. In addition, plaintiff contends that the Fact Sheet was not in compliance with §11.07(b) of the Plan. See Pl. Reply. Br. at 5 n.1.[18] Further, plaintiff claims that Mr. Hall was provided with a red retirement folder during the May 1992 meeting and with regard to the KRIP benefits, the folder did not contain any Fact Sheet explaining Mr. Hall's election rights. See id. at 7. However, there is no dispute based on the evidence presented that Mr. Hall met with the benefits counselor who has attested to the fact that he prepared the election form signed by Mr. Hall at the May 1992 meeting outlining the single life annuity option elected by Mr. Hall, together with the required spousal consent so that he could

---

[17]At the time Mr. Hall retired the means used by Kodak to provide plan participants with information regarding the four types of payments allowed under the Plan was by way of a Retirement Election Fact Sheet. The Fact Sheet lists the normal type of payment for married participants and the other three alternatives available such as the Optional Joint and Survivor Annuity. In addressing the Optional Joint and Survivor Annuity, the Fact Sheet explained that such an option "requires [the plan participant] to take less than 100% of [his or her] annuity but provides [for a] named contingent annuitant or [the] spouse" to receive a percentage annuity after the plan participant's death. See Pribanich Aff., Ex. E. In addition, the Fact Sheet informs the plan participants that they can change their election after they retire and benefit payments have started, provided they submit satisfactory proof of good health. See id.

[18]Moreover, plaintiff claims that the Fact Sheet executed by Mr. Hall identifies a "Joint & Survivor Fact Sheet" while the Pribanich Affidavit refers to the Fact Sheet as a "Kodak Retirement Income Plan Retirement Payment Election Fact Sheet." See id. at 6. Plaintiff argues that the inconsistency between the identity of these documents casts doubt as to whether they are in fact the same information provided to plan participants including Mr. Hall. See id.

receive his benefits in that form. See Pribanich Aff., ¶¶5-7. Significantly, the election form itself contained an acknowledgment, *signed* by both Mr. Hall and the benefits counselor that Mr. Hall was provided with the Fact Sheet explaining a summary of the benefit options under the KRIP. Accordingly, any alleged failure to list all of Mr. Hall's options on the election form itself, including the Optional Joint and Survivor Annuity with a non-spouse as a contingent annuitant was immaterial since he had been previously provided with the information.[19]

**B.   Defendants' Actions Were In Compliance With ERISA**

Section 205 of ERISA, 29 U.S.C. § 1055(a), part of the "Retirement Equity Act" which amended ERISA in 1984, provides, in relevant part:

> (a) Required contents for applicable plans
> Each pension plan to which this section applies shall provide that--
> (1) in the case of a vested participant *who does not die before the annuity starting date*, the accrued benefit payable to such participant shall be provided in the form of a qualified joint and survivor annuity,

See 29 U.S.C. §1055(a)(1)(emphasis added); see also 26 U.S.C. §§401 (a) and 417. As noted above, by its terms, 29 U.S.C §1055(a)(1) and the regulations promulgated thereunder, do not apply to post-retirement scenarios. Section 1055(c), which imposes a requirement

---

[19]In addition, Mr. Hall retired under the KRRR Plan offered by Kodak. In the materials prepared for that specific purpose was a worksheet that could be used by a plan participant in making an election and the worksheet included all four benefit options (Straight Life Annuity, QJSA, Optional Contingent Annuitant and Lump Sum payment). See Pribanich Aff., Ex. B. Thus, there were also other informational materials relating to the benefit form options available to plan participants that was provided to Mr. Hall at other times and in other formats.

for pension plans to include a joint and survivor annuity and pre-

retirement survivor annuity, states:

> (c) Plans meeting requirements of section
> (1) A plan meets the requirements of this section only
> if-
> (A) under the plan, each participant-
> (I) may elect at any time during the applicable election
> period to waive the qualified joint and survivor annuity
> form of benefit or the qualified preretirement survivor
> annuity form of benefit (or both), and
> (ii) may revoke any such election at any time during the
> applicable election period, and
> (B) the plan meets the requirements of paragraphs (2),
> (3), and (4).
> (2) Each plan shall provide that an election under
> paragraph (1)(A)(I) shall not take effect unless-
> (A)(I) the spouse of the participant consents in writing
> to such election, (ii) such election designates a
> beneficiary (or a form of benefits) which may not be
> changed without spousal consent (or the consent of the
> spouse expressly permits designations by the participant
> without any requirement of further consent by the
> spouse), and (iii) the spouse's consent acknowledges the
> effect of such election and is witnessed by a plan
> representative or a notary public[.]

See 29 U.S.C § 1055(c); see also 26 U.S.C. §417(a)(2). Accordingly,

§ 1055(c)(2) provides that a benefit plan such as the one in which

Mr. Hall participated requires spousal consent before the

participant can validly designate a beneficiary other than the

spouse of the plan participant. It is undisputed that the KRIP Plan

complies with Section 1055 of ERISA and that KRIPCO properly

applied the terms of the Plan upon Mr. Hall's retirement. When Mr.

Hall retired, pursuant to the terms of the Plan, he was provided

with his benefits in the form of a QJSA. In addition, he could

elect to take his benefits in the form of a straight life annuity

with his wife's consent. Mr. Hall elected to take the straight life

annuity and Marlene Hall (his spouse at the time) executed the proper consent form. Accordingly, Mr. Hall began receiving and continued to receive his annuity benefits from 1992 to 2006, calculated in accordance with the straight life annuity. Thus, Mr. Hall's election was valid and defendants complied with ERISA provisions pursuant to 29 U.S.C. §1055.

In addition, allowing plaintiff to invalidate the pre-retirement election by Mr. Hall years after his death is unwarranted. "Because the disbursement of plan benefits is based on actuarial computations, the plan administrator must know the life expectancy of the person receiving the...Benefits to determine the participant's monthly Pension Benefits. As a result, the plan administrator needs to know, on the day the participant retires, to whom the...Benefit is payable." See Hopkins v. AT&T Global Info. Solutions Co., 105 F.3d 153, 157 n.7 (4th Cir.1997); see also Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan, 221 F.3d 1235, 1243 (11th Cir.2000) (discussing IRC 411(a)(11) and stating that the present value of any optional form of benefit i.e. a lump sum payout is an optional form of benefit, cannot be less than the present value of the participant's normal retirement benefit).

Here, although the Plan allowed a retiree to revoke his pre-retirement election, the retiree had to comply with certain conditions in order for the revocation to become effective. When a change is made, the amount of future benefits is recalculated in light of the actuarially equivalent benefit, in light of the age

and expected life span of the new annuitant. See Bird v. Eastman Kodak Co., 390 F.Supp.2d 1117, 1120 (M.D.Fl.2005). The reason for this is because, had Mr. Hall elected (when he remarried) to provide plaintiff with a 50% contingent annuity upon his death, an immediate reduction in his monthly benefit, effective at the time of the change of status, would have been necessary to reflect the fact the Plan would be paying a lifetime benefit to a much younger annuitant in order to maintain actuarial equivalence. See Bird, 390 F.Supp.2d at 1122. Going from straight life annuity to a joint and survivor annuity would have lowered the monthly payments during Mr. Hall's lifetime. Therefore, awarding plaintiff a 50% joint and survivor annuity would in essence give Mr. Hall a windfall equal to the difference between those annuity amounts.

Mr. Hall's annuity payments were based on the information he provided to the KRIP in 1992, prior to his retirement. The undisputed facts demonstrate that Mr. Hall received those retirement payments for approximately fourteen years and never sought to revoke or change his benefits. By the terms of the Plan, to which Mr. Hall chose and agreed to be bound, he was precluded from changing after his retirement from receiving a straight life annuity to a 50% Joint and Survivor Annuity with plaintiff unless he complied with certain requirements including providing evidence of good health. Mr. Hall did not notify KRIP of any intention to revoke and did not comply with the requirements of the Plan. Thus, defendants' motion for summary judgment is granted and plaintiff's

cross-motion for summary judgment is denied. Count I and Count II of plaintiff's Amended Complaint is dismissed with prejudice.[20]

### IV.  **Plaintiff's Conflict of Interest Argument Is Without Merit**

Plaintiff contends that defendants' alleged conflict of interest "manifested itself by the repeated failures of the defendants to provide Mr. Hall with the necessary information to make a legitimate and knowledgeable election for benefits under the KRIP." See Pl. Br. at 15. Plaintiff argues that proof of defendants' conflict and their failure to follow the terms of the Plan must be weighed against them when the Court assesses whether defendants' denial of plaintiff's claim for benefits under the Plan was arbitrary and capricious. See id. at 16. This deferential standard remains largely unchanged even when a plan administrator faces a conflict of interest.[21] Under the Supreme Court's recent decision in Metropolitan Life Ins. Co. v. Glenn, "a plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion." See Burgess v. Astrue, 537 F.3d 117, 133 (2d Cir.2008) (citing Glenn, 128 S.Ct. at 2348).

---

[20]Defendants also argue that plaintiff's claim is time-barred. See Def. Br. at 8-11. Plaintiff disputes defendants' argument. See Pl. Reply Br. at 8-9. As stated *supra*, defendants' motion for summary judgment has already been granted based on the undisputed evidence and plaintiff's cross-motion for summary judgment denied. Thus, defendants' timeliness argument is moot.

[21]Here, the Plan Administrator (KRIPCO), which evaluated benefit claims, was the same entity that paid the Plan benefits. Thus, there appears to be the threshold conflict of interest issue that the Court must weigh as a factor in determining whether there was an abuse of discretion. See Metropolitan Life Ins. Co. v. Glenn, 128 S.Ct. 2343, 2348 (2008)

Consideration of the alleged conflict is given greater or lesser consideration depending on whether the "'the administrator has taken active steps to reduce potential bias and to promote accuracy.'" See id. (quoting Glenn, 128 S.Ct. at 2348); see also McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 133 (2d Cir.2008)[22] Such a conflict of interest does not necessitate de novo review, "even where the plaintiff shows that the conflict of interest affected the choice of a reasonable interpretation," id., which it has not in this case.

Plaintiff's principal claim is that the Plan Administrator had a conflict of interest that manifested itself by allegedly failing to inform Mr. Hall of his election options under the Plan. Because the KRIP provides the KRIPCO with broad latitude to interpret and implement its provisions, this Court cannot and will not engage in de novo review. In evaluating plaintiff's claim, and based upon the all the evidence presented including the documentation signed by Mr. Hall, the Plan Administrator correctly determined that Mr. Hall elected to take a single life annuity instead of a Joint and Survivor annuity and that his former wife consented to that election. Further, there was no evidence that Mr. Hall revoked his prior election upon his remarriage. Accordingly, the Plan Administrator reasonably and properly denied plaintiff's claim. Based upon the terms of KRIP, plaintiff is not entitled to receive

---

[22]In McCauley, the Court concluded that the weight given to the existence of the conflict of interest will change according to the evidence presented. "[W]here circumstances suggest a higher likelihood that [the conflict] affected the benefits decision, including, but not limited to, cases where...administrator has a history of biased claims administration," the conflict of interest should prove more important....It should prove less important...where the administrator has taken active steps to reduce potential bias and to promote accuracy[.]" See id. at 133.

the 50% Optional Joint and Survivor Annuity Benefit she now seeks. In accordance with its obligations to administer the Plan according to its terms, the Plan Administrator appropriately denied plaintiff's claims for such benefits. The Plan Administrator's decision is not arbitrary and capricious.

## **CONCLUSION**

For the reasons set forth above, defendants' motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied. Plaintiff's Amended Complaint is dismissed with prejudice in its entirety.

**ALL OF THE ABOVE IS SO ORDERED.**

                    s/Michael A. Telesca
                    MICHAEL A. TELESCA
                 United States District Judge

Dated:    Rochester, New York
          March 20, 2009